NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0138n.06
Filed: March 7, 2008

No. 07-1178

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SUMMERDAWN D. WASHINGTON, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| COMCAST CORPORATION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| _____ | ) | |

BEFORE: BOGGS, Chief Judge; BATCHELDER and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Summerdawn Washington worked as a retention representative for Comcast Cablevision, a subsidiary of defendant Comcast Corporation ("Comcast"), until her termination on November 4, 2004. Following the loss of her job, Washington filed suit against Comcast, alleging breach of contract, promissory estoppel, violation of an implied covenant of good faith and fair dealing, negligent evaluation, violation of Michigan's Persons With Disabilities Civil Rights Act ("Persons With Disabilities Act"), MICH. COMP. LAWS §§ 37.1101 *et seq*., violation of Michigan's Bullard-Plawecki Employee Right to Know Act ("Employee Right to Know Act"), MICH. COMP. LAWS §§ 423.501 *et seq*., and violation of section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140. After Washington voluntarily dismissed her common

law claims, the district court granted Comcast's motion for summary judgment on her remaining

statutory claims raised under the Persons With Disabilities Act, the Employee Right to Know Act,

and ERISA.

Washington now appeals the district court's order, solely as it concerns her ERISA claim.[1]

Finding her claim devoid of merit, we affirm the district court.

I.

Washington began working at Comcast's Macomb Call Center in Sterling Heights, Michigan,

on June 10, 2002. When starting her employment with Comcast, Washington signed an

"acknowledgment and receipt" form of Comcast's employee handbook, which provided that

Washington, as all other Comcast employees, was hired on an "at will" basis. The handbook stated

that an "absence of three (3) consecutive workdays without notice is considered job abandonment,

and will be treated as a resignation from employment." It also contained a summary plan description

("SPD") of Comcast's Short Term Disability ("STD") plan. The STD provided that after 90 days

of employment, employees are eligible for up to 26 weeks of STD benefits under Comcast's

Employee Health and Welfare Benefits Plan. The STD also explained that an employee's "position

cannot be guaranteed beyond twelve (12) weeks" from the start of the employee's disability and that

STD coverage ends on the earliest of "the date the STD benefit is canceled, the date [the employee]

is no longer eligible, *the date* [*the employee's*] *employment terminates*, or the date [the employee]

---

[1]Because Washington has not pursued her Michigan Persons With Disabilities Act or
Employee Right to Know Act claims on appeal, she has waived these arguments. *Radvansky v.
City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005).

take[s] an unpaid personal leave of absence." (emphasis added). Both parties agree that the STD is governed by ERISA.

In June of 2004, Washington informed Comcast Human Resources Administrator Ron Andrews that she needed a leave of absence beginning June 19 to undergo gastric bypass surgery. At Andrews's direction, she contacted Broadspire, the third-party administrator Comcast uses to process and review employee applications for STD leave, and applied for STD leave and income benefits. Washington took off work beginning on June 19, 2004, and underwent surgery on June 24, 2004. On August 9, Comcast's Human Resources Manager Rochelle Prestage sent Washington a letter advising her that Comcast had received a completed Family Medical Leave Act ("FMLA") application form from Washington's physician, that she had been approved for FMLA leave beginning on June 24, 2004, and that Washington was expected to return to work no later than August 12, 2004. The letter also explained that Washington was entitled to a maximum of twelve weeks of unpaid leave during one calender year.

Washington did not return to work as expected on August 12, and six days later, Prestage sent Washington a letter stating that because she had not returned to work on her anticipated return date, she had until August 20, 2004, to report to work and to provide documentation justifying her unexplained absence, or Comcast would consider Washington to have resigned voluntarily. Washington failed to respond, and Comcast sent Washington a letter on August 24, advising her that because she had not returned to work or otherwise contacted Comcast, it assumed that she had voluntarily resigned and that her employment with Comcast was terminated.

On August 25, after receiving the August 24 letter, Washington informed Andrews that she had been hospitalized from August 19 to August 24 due to complications from her surgery and that she did not intend to resign her position with Comcast. Andrews called Broadspire immediately to inform it of Washington's hospitalization. Andrews assured Washington that her employment would not be terminated if she provided all of the necessary paperwork confirming her inability to work to Broadspire. The next day, Broadspire informed Andrews that it had received the necessary paperwork and that continued STD benefits were authorized for Washington through September 11, 2004. On September 16, Washington exhausted the twelve weeks leave of absence for which she had been approved.

From September 12, 2004, to October 13, 2004, Washington continued her absence from work while Broadspire reviewed her claims for extended benefits. On October 13, Broadspire informed Andrews that extended STD benefits had been approved for Washington until October 5, 2004, but denied after that date. Broadspire likewise sent Washington a letter informing her of its decision. Washington denies receiving this letter. She continued to miss work, and, on October 29, Andrews sent Washington a letter informing her that because Broadspire had deemed her ineligible for STD benefits beyond October 5, she was on unapproved leave status, and that if she did not return to work by November 3, Comcast would construe her absence as a voluntary abandonment of her employment. Washington denies receiving this letter as well. When Washington failed to show up to work on November 3, Andrews contacted Broadspire to determine whether Washington had appealed Broadspire's denial of her STD benefits beyond October 5. Informed that she had not,

Andrews terminated Washington as of November 4, and explained in Washington's employee file that Washington "did not respond to correspondence regarding denial of STD Benefits. Employee has voluntarily terminated employment while on unapproved leave."

On November 8, after discovering that her STD benefits were no longer being deposited directly into her bank account, Washington contacted Broadspire. Broadspire informed her that continued STD benefits had been denied and that her benefits had been terminated. Washington responded that she had not received any notice in the mail. Broadspire checked Washington's address in its file and discovered that it had the incorrect street name on file for Washington – she resided on *North* Park Drive, rather than *West* Park Drive as listed in Broadspire's database. Despite this error, Washington was able to receive all correspondence from Broadspire, except the October 13 letter informing her that her benefits were not approved after October 5. Washington later discovered that Comcast had the same incorrect address on file for Washington. Nevertheless, she was able to receive all correspondence from Comcast, except for the October 29 letter requiring her to return to work by November 3. Washington faxed an appeal of Broadspire's benefits determination to Broadspire on November 12.

Washington contacted Comcast on December 16, informing Human Resources employee Kelly Valade that she would be ready to return to work. It appears from the record that this was the first contact Washington had with Comcast, rather than Broadspire, since August 24. Washington appeared at the Macomb Call Center on December 20, where she was told that Comcast had not yet

determined whether Washington was authorized to return to work. Comcast then notified Washington on January 6 that her employment had been terminated on November 4, 2004.

Broadspire wrote to Washington on January 21, 2005, informing her that her appeal of benefits had been reviewed and that STD benefits were approved from October 6, 2004, through December 17, 2004. After learning that Comcast had terminated Washington's employment on November 4, Broadspire sent a "correction letter," stating that her benefits had been approved up to her last day of employment, November 3.

Washington filed suit in the Macomb County Circuit court on December 21, 2005, alleging common law claims of breach of contract, violation of public policy, promissory estoppel, violation of implied covenant of good faith and fair dealing, negligent evaluation, and statutory claims brought pursuant to the Michigan Persons With Disabilities Act and the Employee Right to Know Act. Comcast removed the case to federal court, and Washington amended her complaint to add a claim arising under ERISA. Upon Comcast's motion, the district court granted summary judgment to defendant. Washington now appeals the district court's order, but only with respect to her ERISA claim.

II.

Washington raises two ERISA-based claims on appeal: First, she contends that Comcast failed to provide adequate notice of the termination of her benefits, as required by 29 U.S.C. § 1133. Second, she argues that Comcast violated 29 U.S.C. § 1140 by terminating her employment due to

the exercise of her right to receive STD benefits. Neither argument has any merit, and we accordingly affirm the order of the district court.

First, we regard Washington's claim premised on § 1133 as a red herring. She raised no § 1133 claim in her complaint, but rather stated that she brought her claim "pursuant to 29 U.S.C. § 1132 and 29 U.S.C. § 1140 as a result of the Defendants' interference with Plaintiff's protected rights under an ERISA plan resulting in the Plaintiff's unlawful termination." Nor was this § 1133 claim fully presented to the district court, as Washington's response to Comcast's motion for summary judgment only included an oblique reference to § 1133, claiming that "another violation of ERISA occurred when Comcast failed to properly provide notice in writing to the Plaintiff that she would be terminated if she did not return to work."[2] "[I]ssues not presented to the district court but raised for the first time on appeal are not properly before this court." *J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1489 (6th Cir. 1991). Finally, and perhaps most tellingly, Washington did not name the plan administrator, Broadspire, as a defendant in this case. Thus, we have no basis to address the notice required by § 1133 that Broadspire provided to Washington.

---

[2]This lone statement in Washington's response to Comcast's motion for summary judgment hardly made clear the theory upon which her § 1133 claim was based. Washington's statement suggests that § 1133 somehow required her employer to remind her of the terms of her employment. Section 1133, however, sets forth notice requirements that ERISA-governed plan administrators must provide to participants when the participants' claims for benefits have been denied; it does not concern the notice an employer must provide its employees before terminating their employment.

In any event, even assuming, without deciding, that this claim is properly before us, it has no basis in fact. Section 1133 requires plan administrators, such as Broadspire, to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," 29 U.S.C. § 1133(1). We review Broadspire's letter for "substantial compliance" with § 1133. *Wenner v. Sun Life Assur. Co. of Canada*, 482 F.3d 878, 882 (6th Cir. 2007). Broadspire's "correction letter," dated January 26, 2005, met this standard. After first explaining that STD benefits end on, inter alia, the date of employment termination, the letter then stated: "We have confirmed with your employer you were terminated on 11/4/04. Therefore, Short Term Disability benefits have been denied effective 11/4/04." The letter accurately stated the reason behind Broadspire's termination of Washington's benefits, and did so in clear, unambiguous terms. This was sufficient to discharge Broadspire's responsibility under § 1133. *Cf. Wenner*, 482 F.3d at 882-83 (holding that plan administrator violated § 1133(2) where it failed to accurately explain the basis for its termination of benefits, thereby depriving the beneficiary of a "reasonable opportunity . . . for a full and fair review" of his benefits application).

III.

Washington's remaining claim is based on 29 U.S.C. § 1140, which provides that it is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . ." In order to state a claim under § 1140, Washington must show that

Comcast had a specific intent to violate ERISA. *Schweitzer v. Teamsters Local 100*, 413 F.3d 533, 537 (6th Cir. 2005); *see also Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998) ("To prove a violation of [§ 1140], plaintiffs must establish more than a loss of benefits; they must demonstrate that their employers terminated them with the specific intent of preventing or retaliating for the use of benefits."). She can satisfy this requirement through the introduction of either direct or circumstantial evidence. *Schweitzer*, 413 F.3d at 537; *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997).

Washington's task is clear: "in order to survive [a] defendant's motion for summary judgment, [the] plaintiff must come forward with evidence from which a reasonable jury could find that the defendants' desire to avoid [benefits] liability was a determining factor in [the] plaintiff's discharge." *Schweitzer*, 413 F.3d at 537 (quoting *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1044 (6th Cir. 1992)). If Washington presents such evidence, Comcast then bears the burden to "introduce admissible evidence of a legitimate, nondiscriminatory reason for its challenged action." *Humphreys*, 966 F.2d at 1043 (internal quotation omitted). If Comcast successfully articulates a legitimate reason for Washington's termination, then Washington must prove that the interference with her disability benefits was a motivating factor in Comcast's decision or prove that Comcast's stated reason is pretext. *Id.*

Plaintiff has failed to offer any evidence that Comcast terminated her employment with the specific intent to interfere with Washington's disability benefits. Citing *Lessard v. Applied Risk Management*, 307 F.3d 1020 (9th Cir. 2002), Washington argues that because she was terminated

while seeking STD benefits, she has raised an inference of discrimination. According to Washington, *Lessard* stands for the proposition that "[i]f [the plaintiff] is on leave at the time of her termination, then the discrimination is obvious." *Lessard*, however, is inapplicable to this case.

In *Lessard*, the plaintiff was a recipient of long-term disability benefits. While the plaintiff was away from active work on disability leave, her employer entered into an asset-sale agreement which provided that only the seller's employees who were actively employed on the day of the sale (i.e., "at work") would be covered under the purchaser's welfare benefits plan without an interruption in coverage. *Lessard*, 307 F.3d at 1022-23. The asset-sale agreement thus "facially discriminate[d] against employees who were on disability, workers' compensation, and any other form of extended leave [by] explicitly excepting from its separate schedule for conditional transfer any employee who was absent from work due to vacation, holiday, or personal reasons." *Id.* at 1025-26. The *Lessard* court held that this agreement was direct evidence of a specific intent to interfere with the plaintiff's right to receive disability benefits, thus precluding summary judgment in favor of the defendant.

*Lessard* is no assistance to Washington because at the time of her termination, Washington was neither receiving approved STD benefits nor had she filed any appeal of the termination of her benefits. Rather, Comcast notified Washington in the October 29 letter that she had been deemed ineligible for STD benefits beyond October 5, that she was on "unapproved leave" status, and that she was required to return to work by November 3. Although Washington appealed the termination of her benefits on November 12 (which ultimately resulted in Broadspire's January 26, 2005,

"correction letter"), this occurred after Comcast had terminated her employment. Thus, at the time of her termination, Washington was not on approved leave.

Washington's reliance on our opinion in *Pennington v. Western Atlas, Inc.*, 202 F.3d 902 (6th Cir. 2000), is also misplaced. In *Pennington*, we held that the plaintiff had established a prima facie violation of § 1140 where the plaintiff introduced evidence that (1) the defendant's president and a human resources department employee created a spreadsheet that organized candidates for a proposed reduction in force by, inter alia, birth date, whether the employee smoked, and the employee's health benefit program; (2) the defendant's president stated that the defendant "wanted to reduce salaries and medical costs and . . . [it was] not concerned about lawsuits"; and (3) the plaintiff's expert witness testified that the defendant's reduction in force was not age neutral and that more employees aged 50 or over were terminated than would be expected in a random process. *Id.* at 908. Here, in contrast, Washington has offered no evidence that her termination was part of a pattern of terminating benefit-receiving employees at Comcast, or that Comcast was actually motivated to interfere with Washington's right to receive disability benefits.

In any event, even if we were to find that Washington has established a prima facie case under § 1140 – and we do not – she has not rebutted as pretextual Comcast's explanation for her termination. Comcast contends that Washington was terminated for her unexcused absences from work, consistent with its policy. This claim has a basis in fact, as Comcast's employee handbook provided that an "absence of three or more workdays without notice is considered job abandonment, and will be treated as a resignation from employment. Employees who are terminated for job

abandonment will not be eligible for rehire." In its October 29 letter to Washington, Comcast explained that she was on unapproved leave as of October 6, 2004, and that she would be deemed to have voluntarily abandoned her position unless she returned to work by November 3. Washington did not return to work at Comcast until December 20. Although she testified that she never received the October 29 letter, Washington was hardly diligent in maintaining contact with Comcast; even after learning on November 8 that her benefits had been terminated, she did not speak with Comcast until December 16, nearly four months after her last direct contact with her employer. Having gone nearly four months without hearing from Washington, Comcast was within its rights to terminate her employment. Likewise, because we agree with Comcast and the district court that Washington abandoned her job by failing to report to work on November 4, 2004, Comcast had no duty under its policies to accommodate Washington and find a new position for her at Comcast.

Under these circumstances, we cannot conclude that a genuine issue of material fact exists with respect to Washington's ERISA claim. Accordingly, we agree with the district court that Comcast is entitled to summary judgment.

IV.

For these reasons, we affirm the judgment of the district court.