NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0770n.06

No. 12-6284

FILED

*Oct 09, 2014*

DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ROGER L. SMITH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| COMMONWEALTH GENERAL | ) | WESTERN DISTRICT OF |
| CORPORATION, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE:    SILER, BATCHELDER, and CLAY, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge:** Appellant Roger Smith appeals the district court's denial of his motion to remand his claims to state court and the district court's dismissal of his claims. The district court, holding that Smith's claims were preempted by the Employee Retirement Income Security Act ("ERISA"), denied the motion to remand and dismissed the claims. We AFFIRM.

I.

Smith was an employee of Defendant Commonwealth General Corporation ("CGC"). When CGC agreed to merge with AEGON USA, Inc. ("AEGON"), CGC offered some employees, including Smith, enhanced compensation if they would remain with CGC until its merger with AEGON was completed. The offer's terms were reflected in the Voluntary Employee Retention and Retirement Program ("VERRP"), which the CGC Board of Directors

1

("Board") adopted and approved on October 10, 1997. The Board also "authorized amendment to the [CGC Retirement] Plan to provide for payment of benefits under the terms of the VERRP." On September 8, 1998, Smith wrote to the Board requesting that the Board formally approve the "1st Amendment to the Plan that incorporates the VERRP provisions." Smith had drafted this amendment, and he acknowledged that the Board had approved the VERRP "to offer special benefits under the Commonwealth General Corporation Retirement Plan." The Board adopted the revisions to its Plan, and Smith agreed to CGC's offer on January 16, 1999.

The VERRP provided that Smith would retire on March 1, 2000. Smith elected to receive $1,066.54 under the qualified plan, and $1,122.97 under the non-qualified plan, for a total of $2,189.51 per month.[1] The document through which Smith made this election was titled "AEGON USA Pension Plan: Election for Distribution and Explanation of Benefits," and an attached letter informed Smith that "[i]f you elect to participate in the Voluntary Employee Retention & Retirement Program ('VERRP'), you will be entitled to receive additional benefits from the Commonwealth General Corporation Retirement Plan under that program." VERRP Attachment A stated that Smith was entitled to a $154,976.12 benefit under the CGC Change in Control Plan. Attachment B stated, "As a participant in the [VERRP], you are entitled to receive a supplemental benefit either as a lump sum or in the same annuity form that your regular retirement benefit will be paid."

On February 1, 2000, Smith received a booklet from the AEGON Insurance Group with information on the CGC Retirement Plan and the VERRP, as well as a notice that, effective January 1, 2000, the CGC Plan and the AEGON Pension Plan ("Plan") had been integrated pursuant to the merger. The Plan defines "CGC VERRP Participant" as "a CGC Grandfathered

---

[1]Neither the VERRP booklet nor the AEGON USA Pension Plan booklet explains the difference between qualified and non-qualified benefits.

Participant . . . who was also a participant in the [VERRP] . . . which was an early retirement program in effect in the CGC Plan from September 8, 1997 until December 31, 1999 and in effect in this Plan from January 1, 2000 until February 29, 2000, as a result of the merger of the CGC Plan with this Plan . . . ."

Smith retired on March 1, 2000, and the AEGON Pension Plan ("Plan") paid Smith both a lump sum benefit and $2,189.51 per month. In August 2011, the Plan told Smith that they had been overpaying him by $1,122.97 per month (or the benefit categorized as "non-qualified" under the VERRP) for the previous eleven years. The Plan reduced, and then eliminated, Smith's entire monthly benefit payments, stating that it would make no further payments until it had recouped the overpayment or Smith remitted to the Plan $153,283.25.

Smith exhausted the administrative remedies provided by the Plan by appealing to the AEGON Pension Committee. In his appeal Smith chided the Plan for refusing "to produce all relevant documents and information in accordance with the Plan terms and the applicable laws and regulations," after which he cited a number of "ERISA claims regulations." Smith stated in his appeal that "[t]he VERRP specifically provided enhanced benefits under the Plan, payable either as a lump sum or in this case in an increased monthly annuity of $1,079.48 per month. The VERRP also entered the date on which Mr. Smith could commence receiving his Plan benefits (including the VERRP enhancement)." The Pension Committee denied Smith's appeal, and on March 28, 2012, Smith filed suit against CGC in Jefferson County Circuit Court asserting state-law claims for breach of contract, wage and hour state statutory violations, estoppel, and breach of the duty of good faith and fair dealing. CGC timely removed the action to the U.S. District Court for the Western District of Kentucky. Smith moved to remand pursuant to 28 U.S.C. § 1447(c), and CGC moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

The district court found that the VERRP was regulated by ERISA, that Smith was suing to recover benefits under this ERISA Plan, and that his motion to remand must be denied. The court concluded that because the Pension Committee controlled and administered the Plan, only the Pension Committee would be a proper party defendant. CGC, the court held, was not a proper party defendant. Accordingly, the court dismissed the complaint under Rule 12(b)(6) for failure to state a claim.

II.

Though "[t]he existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person," *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996), we review de novo a district court's Rule 12(b)(6) dismissal, *see Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011); *Santino v. Provident Life & Accident Ins. Co.*, 276 F.3d 772, 774 (6th Cir. 2001) ("The district court's ruling that ERISA preempts Santino's state law claims is a legal conclusion, which this Court reviews *de novo*.").

Common law causes of action asserting contract claims related to an employee benefit plan regulated by ERISA are completely preempted by ERISA, *see Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 45–48 (1987), and complaints filed in state court pleading such causes of action are removable under 28 U.S.C. § 1441(b), *see Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987). Nonetheless,

> the scope of the "complete preemption" exception for removal is narrow. . . . [I]n order to come within the exception a court must conclude that the common law or statutory claim under state law should be characterized as a superseding ERISA action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" . . . .

*Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir. 1995).

This case requires that we answer four questions. First, is the VERRP a "plan" covered by ERISA? Second, does Smith's claim fall within the complete preemption exception for removal, either because it seeks to recover benefits due to Smith under the plan or because it seeks to enforce Smith's rights under the plan? Third, is CGC a proper defendant? And fourth, did the district court err by refusing to permit Smith to amend his complaint?

We begin with the nature of the VERRP. The VERRP is part of the AEGON Pension Plan, and that plan is governed by ERISA.[2] Smith himself drafted the VERRP as an amendment to the CGC Retirement Plan, also an ERISA-governed plan. The CGC Retirement Plan then merged with the AEGON Pension Plan. The VERRP was not a separate severance agreement because Smith drafted it as part of the CGC Retirement Plan. In his memorandum to the CGC Board, Smith requested that the Board formally approve the "1st Amendment to the Plan that incorporates the VERRP provisions" that he had drafted. Smith wrote this amendment after the Board had "authorized amendment to the [CGC Retirement] Plan to provide for payments of benefits under the terms of the VERRP."

Smith agreed to the VERRP on January 16, 1999, *after* the VERRP amendments were incorporated into the CGC Retirement Plan. Thus, the VERRP was part of the CGC Retirement Plan, and after CGC merged with AEGON, the VERRP became part of the ERISA-governed AEGON Pension Plan. The AEGON Pension Plan describes a "CGC VERRP Participant" as "a CGC Grandfathered Participant . . . also a participant in the [VERRP] . . . which was an early retirement program in effect . . . in this Plan from January 1, 2000 until February 29, 2000, as a

---

[2]The AEGON Pension Plan is governed by ERISA. As the district court noted, under *Williams v. WCI Steel Co.*, 170 F.3d 598, 602–03 (6th Cir. 1999), the Plan is an employee benefit plan because "[t]he plan defines the intended benefits, the class of beneficiaries and provides a claims procedure for receiving benefits." The Plan itself states that it "will be governed by and construed according to the federal laws governing employee benefit plans qualified under the Code and ERISA . . . ." Smith has never argued that the AEGON Pension Plan is not an employee benefit plan subject to ERISA.

result of the merger of the CGC Plan with this Plan . . . ." Because the VERRP is part of the ERISA-governed AEGON Pension Plan, the VERRP is an employee benefit plan within the meaning of ERISA.

Smith now characterizes the VERRP as an independent severance agreement between CGC and himself. He argues that although his lump sum payment came from the Pension Plan, CGC mistakenly "paid both his severance benefit and his accrued pension benefit from the pension plan" rather than "from the non-qualified excess benefit plan." Smith's brief avers that "[t]he pension plan reduced his *pension plan periodic payment . . . .*" (emphasis added). Smith seeks recovery of his "monthly retirement benefit." Nowhere in the record before the district court did Smith distinguish between the types of funds to which he was allegedly entitled. And even if the record provided some basis for characterizing some of Smith's benefits as ERISA-governed and some as non-ERISA-governed, Smith waived this argument. *See Washington v. Comcast Corp.*, 268 F. App'x 423, 427 (6th Cir. 2008) ("[I]ssues not presented to the district court but raised for the first time on appeal are not properly before this court." (internal quotation marks omitted)).

Because the VERRP is part of an ERISA-governed benefit plan it is not necessary to analyze whether the VERRP would qualify as an ERISA plan were it an independent severance agreement. But even were this Court to analyze the VERRP as a separate severance agreement, as Smith argues we should, ERISA still completely preempts his claim. In *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 848 (6th Cir. 2006), this Court used a two-part test to determine if a particular severance agreement is governed by ERISA: "1) whether the employer has discretion over the distribution of benefits, and 2) whether there are on-going demands on an employer's assets." We cannot improve upon the district court's thorough and compelling

analysis of the *Kolkowski* test and its application of that test to the VERRP. Although benefit determinations may not involve the same level of discretion as deciding "whether the benefits offered by an acquiring company were 'at least comparable' to the prior benefits," they involve at least as much discretion as "comput[ing] the seniority status of each employee in order to calculate the amount of severance pay and benefits due." *Kolkowski*, 448 F.3d at 848–49. The district court correctly held that these eligibility conditions required that "the administrator [] analyze each employee's particular circumstances in light of the criteria set forth in the plan to determine the employee's eligibility for and level of benefits."

Smith advances several arguments in response to the district court's *Kolkowski* analysis, none of which disturbs our view that the district court's analysis is correct. Smith contends that the VERRP does not impose an ongoing demand on CGC's assets because its funds were distributed in a lump sum.[3] But the option to receive lump sum payments does not mean that no ongoing administrative burden exists. *See Kolkowski*, 448 F.3d at 849 (holding that a one-time lump-sum payment of salary and bonuses met the ongoing benefits requirement because certain other benefits continued for a period of time after the lump-sum payment); *see also Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 15 n.9 (1987) ("While death benefits may represent a one-time payment from the perspective of the beneficiaries, the employer clearly foresees the need to make regular payments to survivors on an ongoing basis. The ongoing, predictable nature of this obligation therefore creates the need for an administrative scheme to process claims and pay out benefits, whether those benefits are received by beneficiaries in a lump sum or on a periodic basis."). Smith also ignores the fact that his claims all relate to his periodic monthly benefits, not his lump sum benefit.

---

[3]Smith ignores the fact that the VERRP provides that its participants also have the option of receiving monthly benefits instead of a lump sum.

Smith also asserts that even if there were an ongoing demand on assets, the demand is on AEGON's assets, not CGC's—the party to Smith's VERRP agreement. While that is true, AEGON succeeded to CGC's assets and liabilities when the two corporations merged. *See* 19 Am. Jur. 2d, *Corporations* § 2330 ("Generally, where a corporation succeeds to the assets of another corporation by virtue of a merger or consolidation and not by way of purchase, the new or resulting corporation is liable for the debts and contracts of the other corporation . . . ."). If the administrative and fiscal burden on CGC's successor in interest does not satisfy the second part of the *Kolkowski* test, then the *Kolkowski* test could never be satisfied for a corporation that later merged or became a wholly owned subsidiary of another corporation. This would be absurd. Thus, the VERRP is a benefit plan controlled by ERISA regardless whether we analyze it as part of the AEGON Pension Plan or as a separate severance agreement.

For Smith's claims to be completely preempted, however, Smith's claims also "must be [] to recover benefits due to the plaintiff under the policy, to enforce his rights under the policy, or to clarify rights to future benefits under the policy." *Harvey v. Life Ins. Co. of N. Am.*, 404 F. Supp. 2d 969, 973 (E.D. Ky. 2005). "ERISA broadly pre-empts state laws that relate to an employee-benefit plan . . . ." *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 733 (1985). Courts give an expansive construction to the term "relates to": "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983); *see also Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) ("This circuit, too, has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA."). Even claims characterized as state-law contract claims can be preempted. *See Peters v. Lincoln Electric Co.*, 285 F.3d 456, 469 (6th Cir. 2002) ("It is not the

label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit.").

Smith's claims relate to, and seek recovery under, the VERRP, an employee benefit plan. In his breach of contract claim, Smith avers that his monthly compensation was reduced "contrary to the VERRP agreement." He contends that "CGC's actions are in breach of the VERRP agreement." Smith's other claims—wage and hour, estoppel, and good faith and fair dealing—all seek to enforce the terms of the VERRP or seek a VERRP benefit. *See Cromwell*, 944 F.2d at 1276 ("Appellants' complaint alleged promissory estoppel, breach of contract, negligent misrepresentation, and breach of good faith . . . . state law claims [] at the very heart of issues within the scope of ERISA's exclusive regulation . . . ."). Even if some of these claims could be characterized as independent state law claims, ERISA preempts claims where "deciding whether to grant benefits . . . was a necessary element of the state-law cause of action." *Hutchison v. Fifth Third Bancorp*, 469 F.3d 583, 588 (6th Cir. 2006). Here, these claims are contingent upon whether the Plan's reduction of benefits was correct. The district court did not err by holding that Smith sought recovery of an ERISA plan benefit. All Smith's claims are therefore preempted by ERISA.

Because the VERRP is governed by ERISA and Smith's claims seek recovery of ERISA plan benefits, CGC is not a proper party defendant. In this case, Smith sued his former employer, CGC. An employer is the proper defendant to a severance plan only if that severance plan is not an employee benefits plan governed by ERISA or "[u]nless an employer is shown to control administration of a plan." *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988).

First, as shown above, the VERRP is governed by ERISA. Second, Smith has never argued,[4] and cannot argue, that CGC controls administration of the VERRP. The burden was on Smith to prove that CGC or AEGON controlled administration of the plan. *See Laird v. Norton Healthcare, Inc.*, 442 F. App'x 194, 202 (6th Cir. 2011) ("Laird has not offered any evidence to show that Norton was in 'control' of the administration of the LTD Plan in order to make Norton a proper party to her long-term benefits claim."). Because Smith did not raise this before the district court, we review only for plain error.

The VERRP is administered by the AEGON Pension Committee, which is appointed by AEGON's Board. The AEGON Pension Plan states, "The term 'Pension Committee' shall mean the committee of individuals appointed by the Board to be responsible for the operations and administration of the Plan in accordance with the provisions of Section 9." The Pension Committee has complete control over the VERRP's claims procedure, including applications for payments and appeals of denials of claims. The Plan also states that "[t]he Pension Committee is the Named Fiduciary within the meaning of section 402(a) of ERISA for purposes of Plan administration." *Cf. Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 522–23 (6th Cir. 2010) ("While it is true that the proper defendant in an ERISA action concerning benefits is the plan administrator, we agree with Defendants that Plaintiffs failed to set forth particularized allegations demonstrating that Medical Mutual is a 'fiduciary' for purposes of ERISA." (citation omitted)).

The fact that the AEGON Board chose the members of the Pension Committee does not mean that AEGON controls administration of the VERRP. *See Boyer v. J. A. Majors Co. Emp. Profit Sharing Plan*, 481 F. Supp. 454, 457–58 (N.D. Ga. 1979) ("According to this document,

---

[4]As the district court observed, "The Plaintiff has not alleged in the complaint or argued in response to the motion to dismiss that Commonwealth is the plan administrator, took an active part in the administration of the plan, or had any control whatsoever over the plan."

the responsibility for administration of the Plan was vested in a Profit Sharing Committee appointed by the Board of Directors of the Company. . . . [T]he evidence is uncontroverted that the Committee was a viable, operating entity which, together with the trustee bank, was wholly responsible for administering the profit sharing plan."). The district court did not commit plain error by concluding that neither CGC nor AEGON administers the VERRP.

Nor did the district court err by refusing Smith an opportunity to amend his complaint. Although Federal Rule of Civil Procedure 15 contemplates that leave to amend be "freely given," there are obvious reasons the district court did not give leave here. Smith sought permission to amend his complaint to state ERISA causes of action against CGC. But CGC was still the wrong defendant. Amendment would have been futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend need not be freely given if the "futility of amendment" is apparent). There is no indication from the record that Smith sought leave to amend his complaint to replace CGC as a defendant with the AEGON Pension Committee. The district court dismissed Smith's complaint without prejudice, allowing Smith to re-file in federal court, which he did.

III.

We AFFIRM the judgment of the district court.

**CLAY, Circuit Judge, dissenting.** Congress enacted the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to "protect . . . the interests of participants in employee benefit plans" by "providing for appropriate remedies, sanctions, and ready access to the Federal courts." § 1001(b). ERISA is supposed to constitute a statutory tool for providing access to courts and *creating* statutory rights, not stripping employees of their legal rights and remedies. In this case, Defendant Commonwealth General Corporation ("CGC") is attempting to use ERISA as both a sword and a shield, asserting that Plaintiff's state law breach-of-contract claims are preempted because they arise under ERISA, and then fending off liability under ERISA by asserting that Plaintiff's claims, as pled, are not covered by ERISA. CGC's duplicitous use of the ERISA statute to wield off liability is not only inconsistent with the purpose and policy of ERISA; it is legally incorrect.

Plaintiff was a long-time employee of CGC. As such, he accrued non-forfeitable pension benefits over the term of his employment, which were payable from the Commonwealth General Corporation Retirement Plan (now AEGON Companies Pension Plan, or "the Plan"). The Plan is an entity independent of the company, CGC.

In 1999, Plaintiff made an agreement directly with his employer, CGC, to receive additional deferred compensation in exchange for agreeing to retire at a specified date. This incentive was separate and distinct from Plaintiff's previously accrued pension benefits. The additional deferred compensation that CGC agreed to provide was not payable from the Plan, but rather from a non-qualified excess benefit plan. Presumably, CGC was responsible for arranging and funding the non-qualified excess benefit plan.

The terms of Plaintiff's agreement with CGC were reflected in the Voluntary Employee Retention and Retirement Program ("VERRP"). In consideration of the benefits provided under

the VERRP, Plaintiff agreed not only to retire on a certain date, but also to waive and release his employer, CGC, from any and all claims, demands, lawsuits, and liabilities not expressly reserved. CGC sent Plaintiff a booklet containing various forms and contracts on February 1, 2000, and Plaintiff executed the paperwork on February 28–29, 2000.

After Plaintiff retired at the agreed-upon date, he received payments for about eleven years without incident. As it turns out, these payments, which totaled the amount owed to Plaintiff for *both* the pension benefits payable from the Plan as well as the enhanced compensation *not* payable from the Plan, were *both* being made by the Plan. Over a decade after Plaintiff retired and began receiving pension benefits, and without any warning, Plaintiff was informed that his benefit had actually been paid by the wrong party, and that party—the Plan— demanded recoupment. Apparently, CGC had not arranged for Plaintiff's benefits to be paid from the non-qualified excess benefit plan as agreed. In other words, CGC had breached the agreement.

CGC would now like to push the blame for this apparent mix-up onto the Plan and escape liability for its failure to make payments to Plaintiff as agreed. While the Plan may be liable in its own right for violations under ERISA,[1] CGC might certainly be liable as well. Whether Plaintiff's claim against CGC is cognizable as a state law breach of contract claim or a federal claim for benefits pursuant to ERISA, Plaintiff must have some remedy available to him. CGC's attempt to have it both ways—casting Plaintiff's claim as an ERISA claim for benefits that is preempted by federal law in state court and alleging that Plaintiff failed to state an ERISA claim under federal law—cannot and should not prevail. ERISA is, among other things, a tool to enable employees and beneficiaries to assert their rights; it is not a weapon to protect employers

---

[1]Whether the Plan is independently liable for violating ERISA is not a question before the Court in the present case. The dissent expresses no opinion on the Plan's potential liability for ERISA violations.

for wrongfully denying these rights, or for breaching agreements with employees that only nominally relate to benefits. *See Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444 (6th Cir. 2003) ("[W]e will not conclude that state-law claims are preempted where their effect on employee benefits plans is merely tenuous, remote or peripheral.") (internal quotation marks omitted).

Furthermore, it defies both logic and basic standards of fairness for the Court to allow removal on the basis that Plaintiff's complaint contains a cause of action sounding in ERISA, and then to grant Defendant's motion to dismiss and enter final judgment against Plaintiff because his claim, as pled, fails to state a claim under ERISA, without allowing Plaintiff the opportunity to amend his complaint and recast his claim as an ERISA claim. The prevailing practice in this Circuit and others is to grant a party whose state law claims have been removed on the basis of complete preemption leave to file an amended complaint, allowing them to state a cause of action under ERISA. *See, e.g.*, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 411 (6th Cir. 1998) (following removal of state-court action on the basis of complete preemption of state common law claims, plaintiff filed amended complaint, asserting several causes of action directly under ERISA).

Rule 15 of the Federal Rules of Civil Procedure instructs that leave to amend "shall be freely given[.]" Fed R. Civ. Pro. 15(a)(2). The opportunity to amend is especially important in cases like this, where a state law claim is removed to federal court on the basis of complete preemption. We cannot expect a court to construe and analyze the claims set forth in a state law complaint as claims for benefits under ERISA without allowing the parties an opportunity to frame their claims as such. The majority's naked assertion that amendment would have been

"futile" is not only speculative, but also unsupported by the facts of this case.[2] Majority Op. at 11. Because I believe that the district court erred by denying Plaintiff the opportunity to amend his complaint to state a claim under ERISA, I respectfully dissent.

---

[2]Although we usually review a district court's order denying a Rule 15(a) motion to amend under a deferential abuse of discretion standard, we review the denial of a Plaintiff's motion to amend *de novo* where the district court denied the motion for leave to amend on the basis of futility. *Riverview Health Inst. v. Med. Mut. of Ohio,* 601 F.3d 505, 512 (6th Cir. 2010).